# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of<br><br>Clifford Cheah King Mun and Maso Capital Investments Limited<br><br>Petitioners, for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | Case No. 22- |

## PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR <u>USE IN A FOREIGN PROCEEDING</u>

Ira A. Schochet
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0864
Facsimile: (212) 883-7064
ischochet@labaton.com

Minyao Wang
REID COLLINS & TSAI LLP
330 West 58th Street
Suite 403
New York, NY 10019
Telephone: (212) 344-5200
Facsimile: (212) 344-5299
mwang@reidcollins.com

Duane L. Loft
Melissa J. Kelley
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2380
dloft@bsfllp.com
mjkelley@bsfllp.com

*Attorneys for Petitioners*

Dated: June 15, 2022

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................... 1

BACKGROUND ........................................................................................... 4

    A.    Parties to the Bermuda Appraisal Proceedings and the Company.............. 4

    B.    The Acquisition.................................................................................... 5

    C.    The Acquisition's Unfair Price and Process. ............................................... 7

    D.    Petitioners' Bermuda Appraisal Proceedings. ............................................ 9

    E.    Discovery in the Bermuda Appraisal Proceedings. ................................... 9

    F.    Respondent and the Discovery Sought. .................................................... 10

ARGUMENT ............................................................................................... 10

    I.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782........................................................................................................ 12

        A.    Respondent is Found in this District............................................. 12

        B.    The Discovery Sought is "For Use" in a Foreign Proceeding. ................ 18

        C.    Petitioners are "Interested Persons."........................................................ 19

    II.    The *Intel* Factors Weigh Strongly in Petitioners' Favor. ........................................ 19

        A.    *Intel* I: Respondent is Not a Party to the Bermuda Appraisal Proceedings. ............................................................................... 19

        B.    *Intel* II: The Bermuda Court is Receptive to the Requested Discovery.... 20

        C.    *Intel* III: Petitioners are Not Circumventing Foreign Proof-Gathering Restrictions. ............................................................................... 22

        D.    *Intel* IV: The Subpoena is Not Unduly Burdensome. ............................... 23

    III.    Expedited Compliance with the Subpoena is Warranted........................................ 25

CONCLUSION.............................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Am. Patriot Ins. Agency, Inc. v. Hendricks*,
No. 10-CV-00985 (N.D. Ill. Feb. 12, 2010), ECF No. 1-3 .................................................... 22

*Am. Patriot Ins. Agency, Inc. v. Hendricks*,
No. 10-CV-00985 (N.D. Ill. Feb. 19, 2010), ECF No. 8 ..................................................... 21

*Amphenol Corp. v. Fractus, S.A.*,
2019 WL 2521300 (S.D.N.Y. June 19, 2019) ........................................................ 20

*Azima v. Citibank*,
*N.A.*, 2022 WL 1287938 (S.D.N.Y. Apr. 29, 2022) ............................................... 19

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012) .................................................................. 2, 18, 20, 23

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016) ................................................................................. 12

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*,
798 F.3d 113 (2d Cir. 2015) ................................................................................. 18

*Discover Fin. Servs. Inc. v. Visa U.S.A. Inc.*,
2006 WL 1699566 (S.D.N.Y. June 20, 2006) ........................................................ 14

*Euromepa, S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995) ...................................................................... 21, 22, 24

*First Am. Corp. v. Price Waterhouse LLP*,
154 F.3d 16 (2d Cir. 1998) ................................................................................... 23

*FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*,
No. 21-mc-1019 (C.D. Cal. Nov. 22, 2021), ECF No. 40 .................................... 20

*Gucci Am., Inc. v. Curveal Fashion*,
2010 WL 808639 (S.D.N.Y. Mar. 8, 2010) .......................................................... 14

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
2020 WL 820327 (N.D. Cal. Feb. 19, 2020) ........................................................ 24

*In re Accent Delight Int'l Ltd.*,
869 F.3d 121 (2d Cir. 2017) ...................................................................... 11, 18, 19

*In re Accent Delight*,
2018 WL 2849724 (S.D.N.Y. June 11, 2018) ....................................................... 25

*In re Al-Attabi*,
2022 WL 229784 (S.D.N.Y. Jan. 26, 2022) ........................................................... 21

*In re ALB-GOLD Teigwaren GmbH*,
2019 WL 4140852 (E.D.N.Y. Aug. 30, 2019) ........................................................ 17

*In re Application of Hill*,
2005 WL 1330769 (S.D.N.Y. June 3, 2005) .......................................................... 22

*In re Application of Mota*,
No. 19-MC-573 (S.D.N.Y. Jan. 3, 2020), ECF No. 7 ............................................ 12

*In re Application of MTS Bank*,
2017 WL 3276879  (S.D. Fla. Aug. 1, 2017) ......................................................... 17

*In re Application of Polygon Global Partners LLP*,
2021 WL 1894733 (D.R.I May 11, 2021) ........................................................ 13, 14

*In re Application of The Liverpool Ltd. P'ship*,
2021 WL 3793901 (D. Del. Aug. 26, 2021) ........................................................... 17

*In re Barnwell Enterprises Ltd*,
265 F. Supp. 3d 1 (D.D.C. 2017) ........................................................................... 13

*In re Bayer AG*,
146 F.3d 188 (3d Cir. 1998) ................................................................................... 23

*In re Belparts Group, N.V.*,
2021 WL 4942134 (D. Conn. Oct. 22, 2021) ........................................................ 13

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019) ............................................................................ 12, 23

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf*,
2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ................................................... 13, 24

*In re Gushlak*,
2011 WL 3651268 (E.D.N.Y. Aug. 17, 2011) ........................................................ 23

*In re Habib*,
2022 WL 1173364 (S.D.N.Y. Apr. 20, 2022) ......................................................... 24

*In re Liverpool Limited Partnership*,
2021 WL 5605044 (S.D.N.Y. Nov. 24, 2021) ........................................................ 15

*In re Mother's Milk, Inc.*,
2020 WL 2514315 (S.D.N.Y. May 15, 2020) ........................................................ 25

*In re Porsche Automobil Holding SE*,
  2016 WL 702327 (S.D.N.Y. Feb. 16, 2016) ............................................................. 11, 21, 24

*In re Top Matrix Holdings Ltd.*,
  2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) .............................................................. 13, 22, 24

*In the Matter of the Application of Winston Wen-Young for Assistance Before a Foreign
    Tribunal*,
  No. 21-cv-8627 (D. N.J. June 15, 2021), ECF No. 19 ........................................................ 21

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ..................................................................................................... passim

*Kenyon v. Simon & Schuster, Inc.*,
  2016 WL 5930265 (S.D.N.Y. Oct. 11, 2016) ................................................................... 20

*Kuwait Ports Authority*,
  2021 WL 5909999 (S.D.N.Y. Dec. 13, 2021) ................................................................... 13

*Leon v. Clorox Co.*,
  2020 WL 4584204 (N.D. Cal. Aug. 10, 2020) .................................................................. 14

*Marubeni Am. Corp. v. LBA Y.K.*,
  335 Fed. App'x 95 (2d Cir. June 17, 2009) ...................................................................... 11

*Matter of De Leon*,
  2020 WL 1180729 (S.D. Ohio Mar. 12, 2020) ................................................................. 13

*Matter of Degens*,
  2020 WL 4252725 (S.D.N.Y. July 24, 2020) ............................................................. 13, 24

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) .................................................................................. 11, 19, 22

*Motorola Credit Corp. v. Uzan*,
  2013 WL 6098388 (S.D.N.Y. Nov. 20, 2013) ......................................................... 14, 16, 18

*Pearson v. Univ. of Chicago*,
  2021 WL 194725 (D. Conn. Jan. 20, 2021) ...................................................................... 20

*Sergeeva v. Tripleton Int'l Ltd.*,
  834 F.3d 1194 (11th Cir. 2016) .................................................................................. 12, 14

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018) ............................................................................................ 12

*Thomas v. City of New York*,
  | 336 F.R.D. 1 (E.D.N.Y. 2020) ....................................................................................... 20

iv

*Union Fenosa Gas, S.A. v. Depository Tr. Co.*,
    2020 WL 2793055 (S.D.N.Y. May 29, 2020) ..................................................... 13

**Statutes**

17 § CFR 210.1-02 ....................................................................................................... 21

28 U.S.C. § 1782 ................................................................................................. 5, 14, 26

Clifford Cheah King Mun and Maso Capital Investments Limited ("**Petitioners**") respectfully submit this application pursuant to 28 U.S.C. § 1782 (the "**Application**") seeking an order: (a) granting Petitioners leave to serve a subpoena (the "**Subpoena**") on JPMorgan Chase & Co. ("**Respondent**" or "**JPM**"); (b) directing Respondent to produce the tailored materials described in the Subpoena within thirty days of service of the Subpoena; (c) directing Respondent to provide a witness to appear for a Rule 30(b)(6) deposition in compliance with the Subpoena on a mutually agreeable date within a reasonable time after Respondent's confirmation of the final production in response to the Subpoena; and (d) granting any and all other relief to Petitioners as the Court deems just and proper.

## PRELIMINARY STATEMENT

Petitioners respectfully submit this Application pursuant to 28 U.S.C. § 1782 to take tailored discovery from a corporation found in this District for use in shareholder appraisal proceedings filed in the Supreme Court of Bermuda (the "**Bermuda Court**") on April 15, 2021 (the "**Appraisal Proceedings**"). In the Appraisal Proceedings, Petitioners (along with other dissenting shareholders) seek a determination of the fair value of their shares in Jardine Strategic Holdings Limited ("**Jardine Strategic**" or the "**Company**"), a Bermuda company that was delisted from public stock exchanges and taken private on April 15, 2021, through an acquisition (the "**Acquisition**") orchestrated by its majority shareholder, Jardine Matheson Holdings Limited (together with certain affiliated companies, "**Jardine Matheson**").

The Acquisition—deemed a "stain on corporate governance" by one financial analyst— was coercive and fundamentally unfair to Petitioners, whose minority shareholding was forcibly acquired through the Acquisition, with respect to both the Acquisition Price (as defined below)

1

and its approval process.  The Acquisition was the culmination of what another financial analyst deemed "regulatory arbitrage at its finest," whereby Jardine Matheson engineered a stock exchange listing and governance structure to ensure that the Company's Minority Shareholders (as defined below) would never have a say in any acquisition by Jardine Matheson as the Company's majority shareholder.  This created what Bloomberg called a "Bermuda Triangle" where "It's Value That Goes Missing."  The Acquisition Price ignored the Company's own internal calculation of net asset value ("**NAV**"), was not properly scrutinized by non-executive directors, and was presented to Minority Shareholders as a *fait accompli*.

Through this Application, Petitioners seek tailored discovery from Respondent, which, through its wholly owned subsidiary J.P. Morgan Securities plc (d/b/a "**J.P. Morgan Cazenove**"), served as lead financial advisor to Jardine Matheson, the immediate parent, majority shareholder, and acquirer of the Company.  Petitioners seek discovery from Respondent concerning the process leading to the Acquisition and the valuation of the Company's shares—the core issues in the Appraisal Proceedings.

Section 1782 authorizes this Court to order discovery from any person or entity that resides or is found in this District to assist with pending or contemplated proceedings before foreign tribunals.  Section 1782's broad applicability and "modest prima facie elements" reflect "Congress's goal of providing equitable and efficacious discovery procedures."  *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).  As described below, Petitioners' Application meets all of the statutory requirements of Section 1782: (i) Respondent "resides" or is "found" in this District because its principal place of business is at 383 Madison Avenue, New York, NY 10017; (ii) the Requested Discovery (as defined below) is "for use" in a foreign proceeding, namely the Appraisal Proceedings; and (iii) Petitioners, as parties to the Appraisal

Proceedings, easily meet the standard for an "interested person."  In addition, and as further explained below, each of the Supreme Court's four factors that guide this Court's exercise of discretion under Section 1782 weigh decisively in favor of granting Petitioners' Application.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("*Intel*").

*First*, Petitioners seek discovery from a "nonparticipant in the matter arising abroad."  *Id.* Respondent is not a party in the Appraisal Proceedings or otherwise subject to the jurisdiction of the Bermuda Court.

*Second*, "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" all support granting Petitioners' Application.  *Id.*  There is no indication, let alone "authoritative proof," suggesting that the Bermuda Court might be unreceptive to Section 1782 assistance.  To the contrary, Petitioners will have the right to present evidence gathered under Section 1782 to the Bermuda Court in support of their claims, and the Bermuda Court will be receptive to that evidence.

*Third,* the Application is not "conceal[ing] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country."  *Id.* at 265.  The Requested Discovery does not implicate any privilege or protection that would make it improper under Bermuda law.

*Fourth*, the Requested Discovery is not "unduly intrusive or burdensome."  *Id.*  To the contrary, the Subpoena is tailored to seek information directly relevant to the critical issues in the Appraisal Proceedings—namely: (a) J.P. Morgan Cazenove's participation in the Acquisition as financial advisor to Jardine Matheson; (b) any valuation of the Company performed by J.P. Morgan Cazenove; and (c) the process that Jardine Matheson undertook to develop and propose the Acquisition (including to arrive at the Acquisition Price).

*Finally*, this Court should exercise its discretion to order production of any responsive discovery that Respondent has in its possession, custody, or control, regardless of the physical location of that evidence.  Section 1782 is extraterritorial in reach, and courts commonly order discovery of evidence located abroad within the Respondent's possession, custody, or control, particularly where, as here, the discovery is from a third-party that is not subject to the jurisdiction of the foreign court.

## BACKGROUND

### A.    Parties to the Bermuda Appraisal Proceedings and the Company.

Petitioners are dissenting shareholders in the Appraisal Proceedings.  *See* Declaration of Mark Chudleigh in Support of Petitioners' Application ("**Chudleigh Decl.**") ¶ 3.   Petitioner Clifford Cheah King Mun is an individual residing in Singapore.   Petitioner Maso Capital Investments Limited is an investment fund incorporated in the Cayman Islands.  *Id* ¶ 7.  Petitioners owned Jardine Strategic shares before the effective date of the Acquisition that is the subject of the Appraisal Proceedings.  *Id*.

Jardine Strategic was incorporated and registered in Bermuda in 1986 and formed part of a conglomerate (the "**Jardine Group**").  The Company and the Jardine Group made long-term strategic investments in multinational businesses—operating mainly in Greater China and Southeast Asia—across sectors such as property, retail, luxury hotels, and the automotive industry.  *Id*. ¶ 8.  A unique feature of the Jardine Group is its "cross-holding structure," which has been criticized by investors as "opaque."  Loft Decl. Ex. 2 at 3.  For example, prior to the Acquisition, Jardine Matheson (the Company's direct parent and the parent company of the Jardine Group), held an 84.89% interest in Jardine Strategic, and Jardine Strategic held a 59.3% interest in Jardine Matheson.  Chudleigh Decl. ¶ 8.  As one financial analyst explained, "such an arrangement has the effect of creating firsts among equals in shareholding."  Loft Decl. Ex. 7 at 14.

4

Before the Acquisition, the Company was publicly traded on the main market for listed securities of the London Stock Exchange ("**LSE**"), was (since 2014) listed on the United Kingdom Listing Authority's Official List in "Standard" form, and had secondary listings on the Main Board of the Singapore Exchange ("**SGX**") and the Bermuda Stock Exchange ("**BSE**").  Chudleigh Decl. ¶ 11 n.1.  As explained in greater detail in the Chudleigh Declaration, the Company's "Standard" listing exempted it from Chapter 11 of the UK Listing Rules, which would have prohibited Jardine Matheson, as the Company's controlling shareholder, from voting on the Acquisition.  *Id*. ¶ 11. The Company's secondary listing on the SGX also exempted it from requirements in the Singapore Exchange Rulebook that would have prohibited Jardine Matheson as the Company's controlling shareholder from voting on the Acquisition, and would have required that at least 75 percent of independent shareholders approve the Company's de-listing.  *Id*. ¶ 11 n.1.

### B.  The Acquisition.

Having designed a listing structure that Bloomberg called a "master class in how to maneuver through the gaps in transnational governance," Loft Decl. Ex. 4 at 2, on March 8, 2021, the Company and Jardine Matheson announced that they had agreed to a proposal by Jardine Matheson to acquire the remaining 15.11% of Jardine Strategic's issued share capital that Jardine Matheson did not already own.  Chudleigh Decl. Ex. 5 at 1.  The Acquisition provided Jardine Shareholders $33 per share in cash (the "**Acquisition Price**") and was touted by the Company as a "unique opportunity" for minority shareholders who were independent of Jardine Matheson and its subsidiaries (the "**Minority Shareholders**").  Chudleigh Decl. Ex. 2 at 13.  That announcement also stated that "J.P. Morgan Securities plc, which conducts its UK investment banking business as J.P. Morgan Cazenove ('J.P. Morgan Cazenove'), . . . [is] acting as lead financial advisor[ ] . . . to Jardine Matheson in connection with the Acquisition."  *Id.* at 6.

Because seven of nine members of the Company's board of directors (the "**Jardine Strategic Board**") also were members of Jardine Matheson's board of directors (the "**Jardine Matheson Board**"), the Jardine Strategic Board established the Transaction Committee, consisting of Lincoln Leong and Lord Powell—who were not themselves members of the Jardine Matheson Board—to evaluate the Acquisition.  Chudleigh Decl. Ex. 2 at 10.  Messrs. Leong and Powell informed the Minority Shareholders that they "consider[ed] the terms of the Acquisition to be fair and reasonable insofar as [Minority Shareholders] are concerned," and "unanimously recommend[ed] that [Minority Shareholders] vote in favour of the Amalgamation Resolution." *Id.* at 16.  A few days later, on March 11, 2021, the Company issued its "2020 Preliminary Announcement of Results," which revealed the Company's own assessment of its net asset value ("**NAV**") was $58.22 per share as of December 31, 2020, a value *76%* higher than the proposed Acquisition Price of $33.  *See* Chudleigh Decl. Ex. 6 at 2.

On April 12, 2021, a special general meeting of shareholders was held to approve the Acquisition.  Bermuda law required that the Acquisition be approved by 75 percent of shareholders present and voting.  Chudleigh Decl. ¶ 13.  Given that Jardine Matheson had "formally undertaken to Jardine Strategic that it [would] vote" and "procure[d] that its wholly-owned subsidiaries vote" in favor of the Acquisition, its passage was a foregone conclusion.  Chudleigh Decl. Ex. 3 at 10.  In total, a majority of Minority Shareholders who attended the meeting voted against the Acquisition.  Chudleigh Decl. Ex. 13.

Post-Acquisition, the Company's shares were delisted from the LSE's Main Market and from their listings on the Official List, the SGX, and the BSE.  The Company then combined with an indirect subsidiary of Jardine Matheson to form a new Bermuda company.  Chudleigh Decl. Ex. 3 at 17.  A group comprising Jardine Group directors, other members of the founding families

of Jardine Matheson, and certain other trusts and foundations held approximately 43 percent of Jardine Matheson post-Acquisition.  Chudleigh Decl. Ex. 5 at 4.

### C.     The Acquisition's Unfair Price and Process.

Multiple commentators voiced concerns about the terms of the Acquisition and the negotiation process.  For example, BlackRock Investment Stewardship said it harbored "serious concerns about conflicts of interests inherent in this related party transaction, as well as the opportunistic pricing of Jardine Strategic considered under the Acquisition terms," and that "the Transaction Committee and the Board of Directors of Jardine Strategic did not effectively protect the interests of minority shareholders."  Loft Decl. Ex. 3 at 2.  The key problems can be summarized briefly as follows.

*First*, the Acquisition was opportunistically timed to capitalize on a temporary decline in the Company's trading price associated with the political unrest that rocked Hong Kong in 2019 and the global pandemic that began in early 2020.  The Acquisition provided Minority Shareholders with the Acquisition Price of $33 per share, based on the closing price of Jardine Strategic shares as of March 5, 2021, and the weighted average of the previous year's trading prices.  Chudleigh Decl. Ex. 2 at 16.  However, on March 11, 2021—a mere three days after the Company announced the Acquisition—the Jardine Group's 2020 preliminary financial results valued the net assets of the Company at $58.22 per share.  This was 76.4% above the Acquisition Price.  Chudleigh Decl. ¶ 12.  As one financial analyst explained, "For [Jardine] Matheson shareholders it's a really good deal . . . For other [Jardine] Strategic shareholders, this is not a good deal. The price should be raised substantially."  Loft Decl. Ex. 2 at 3.

*Second,* neither the Acquisition nor the Company's de-listing required approval by a majority of Minority Shareholders ("**MoM Protection**"), a common corporate governance mechanism used to protect minority shareholders from controlling shareholders.  Chudleigh Decl.

¶ 16.  Bermuda law required that the Acquisition be approved by a majority vote of three quarters of the shares voting at a special general meeting of shareholders.  However, Jardine Matheson and its subsidiaries were allowed to vote their 84.89 percent shareholding in the Company.  *Id.* ¶ 13. And by virtue of the Company's carefully designed listing structure—which one financial analyst deemed "regulatory arbitrage at its finest"—Loft Decl. Ex. 7 at 1—Jardine Matheson ensured that neither Bermudan law, nor English law, nor Singaporean law required MoM Protection. Chudleigh Decl. ¶¶ 10-11 & n.1.  Therefore, as the circular issued in connection with the Acquisition (the "**Circular**") explained, "the requisite Jardine Strategic Shareholders' approval is certain to be secured."  Chudleigh Decl. Ex. 2 at 10.  Or, as the financial press explained, "Jardine Matheson could basically name any price and the minority shareholders of Jardine Strategic will not have a choice."  Loft Decl. Ex. 2 at 2.  And had the Acquisition been subject to MoM Protection, it would not have been approved.  *See* Chudleigh Decl. ¶ 16.

*Third*, the Transaction Committee was not independent or disinterested.  Its two members—Lincoln Leong and Lord Powell of Bayswater (both of whom are described in the Circular as "non-executive directors" rather than independent directors)—served on other boards of the Jardine Group for decades (including, for Lord Powell, Jardine Matheson), alongside numerous other directors of Jardine Strategic.  Chudleigh ¶ 15 n.3.  Mr. Leong also held 375,987 shares in Jardine Matheson at the time of the Acquisition, which increased by $4,327,610 after the Acquisition was announced.  *Id*.

*Fourth*, there were overlapping directorships between Jardine Matheson and the Company, and significant shareholdings in Jardine Matheson by those directors.  Seven of the nine members of the Jardine Strategic Board of Directors also sat on the Jardine Matheson Board—and constituted over *half* of the Jardine Matheson Board.  Chudleigh Decl. Ex. 2 at 38.  It is not clear

how these seven individuals managed their competing fiduciary duties to shareholders of Jardine Matheson, on the one hand, and shareholders of the Company (including the Minority Shareholders) on the other.  Moreover, at the time that the Acquisition was announced, eight of the nine directors of the Company (and/or their closely associated persons) either directly held or beneficially benefitted from at least 90,599,688 shares in Jardine Matheson, which increased by over a billion dollars following the Acquisition's announcement.  Chudleigh Decl. ¶ 14 & n.2.

*Fifth*, the Circular does not disclose any efforts by the Transaction Committee to solicit a single additional bid, conduct a "market check," or insist on a "go-shop" provision.  *See* Chudleigh Decl. Ex. 2.  These are standard features of an arm's-length sale process that might otherwise have protected the Minority Shareholders.  And because of the Jardine Group's cross-holding structure, no third party could launch a take-over.  *See* Loft Decl. Ex. 7 at 13.

### D.      Petitioners' Bermuda Appraisal Proceedings.

Under Section 106(6) of the Bermuda Companies Act, the Bermuda Court in the Appraisal Proceedings will determine the fair value of the dissenting shareholders' shares.  As described in the accompanying Chudleigh Declaration, the parties to the Appraisal Proceedings—including the Petitioners and Jardine Strategic—will submit evidence, expert testimony, and legal briefs to the Bermuda Court, which will consider the evidence and determine the fair value of Petitioners' shares.  Chudleigh Decl. ¶¶ 22-24.  In assessing fair value in the Appraisal Proceedings, the Bermuda Court also will examine the fairness (or lack thereof) of the process that led to Jardine Matheson developing and proposing the Acquisition.  Chudleigh Decl. ¶¶ 25-27.

### E.      Discovery in the Bermuda Appraisal Proceedings.

Discovery of non-parties outside the Bermuda Court's jurisdiction, like Respondent, is very limited and rarely available.  *Id.*  Nevertheless, the Bermuda Court remains receptive to evidence obtained through judicial measures such as 28 U.S.C. § 1782.  *Id.* ¶¶ 33-39.  Furthermore, there is

no requirement to obtain permission from the Bermuda Court before seeking relevant evidence in the U.S. under 28 U.S.C. § 1782. *Id.* ¶ 33.

**F.     Respondent and the Discovery Sought.**

Respondent is JPM, the parent of wholly owned subsidiary J.P. Morgan Cazenove, which served as lead financial advisor to Jardine Matheson in connection with the Acquisition. *Id.* at ¶ 5.[1]  As explained further below, JPM exercises a significant degree of both legal and practical control over J.P. Morgan Cazenove.  Petitioners' Application seeks discovery from Respondent concerning, *inter alia*: (i) the fairness of the Acquisition Price and the inputs used and processes followed by Jardine Matheson in determining the Acquisition Price; (ii) the process Jardine Matheson followed in developing and launching the Acquisition; (iii) financial analyses, email or other correspondence, meeting minutes, internal working papers and drafts,  and any other materials used, reviewed or prepared by J.P. Morgan Cazenove in connection with the Acquisition; and (iv) any advice provided by J.P. Morgan Cazenove in connection with the Acquisition ("**Requested Discovery**"). The Requested Discovery will significantly assist the Bermuda Court in its evaluation of the Acquisition and determination of the fair value of Petitioners' former shares in Jardine Strategic.

**ARGUMENT**

Section 1782 of Title 28 of the United States Code permits United States District Courts to grant discovery for use in a pending foreign proceeding. *Intel*, 542 U.S. at 246.  A Section 1782

---

[1] *See* Loft Decl. Ex. 5 (JPM 2021 10-K) at 99 ("J.P. Morgan Securities plc is a wholly-owned subsidiary of JPMorgan Chase Bank, N.A.); Loft Decl. Ex. 8 (JP Morgan Chase Bank, National Association Consolidated Financial Statements For the three years ended December 31, 2020) at cover page ("JPMorgan Chase Bank, National Association (a wholly-owned subsidiary of JPMorgan Chase & Co.)");  Loft Decl. Ex. 6 (J.P. Morgan Cazenove 2021 Annual Report) at 78 ("The Company's [J.P. Morgan Cazenove] ultimate parent undertaking and controlling party is JPMorgan Chase & Co.")

application must satisfy three statutory requirements: (1) the discovery is sought from someone who resides or is found within the district; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017).

If these statutory requirements are met, the court then considers four discretionary "*Intel*" factors in deciding whether to grant a Section 1782 application: (1) whether the person from whom discovery is sought is a "nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Intel,* 542 U.S. at 264–65.

In exercising its discretion, the Court should consider "the twin aims of Section 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *Mees v. Buiter*, 793 F.3d 291, 297-98 (2d Cir. 2015).  None of the discretionary factors should be given more weight than the others, and no one factor is dispositive. *Marubeni Am. Corp. v. LBA Y.K.*, 335 Fed. App'x 95, 97 (2d Cir. June 17, 2009). Moreover, "[a]s a general matter, the Supreme Court and the Second Circuit have made clear that district courts are to take a hospitable view of applications to compel the production of evidence by persons found or residing in the United States for use in foreign litigation." *In re Porsche Automobil Holding SE*, 2016 WL 702327, at *2 (S.D.N.Y. Feb. 18, 2016).

## I.    THE APPLICATION SATISFIES THE THREE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782.

### A.    Respondent is Found in this District.

Section 1782's first statutory element—that an entity "reside or be found" in a district—is satisfied when the entity is headquartered in the state.  Under the Second Circuit's decision in *Valle Ruiz*, "found in" under Section 1782 is coextensive with the limits of personal jurisdiction consistent with due process.  *In re del Valle Ruiz*, 939 F.3d 520, 527–528 (2d Cir. 2019).  "[A]side from the truly exceptional case, a corporation is at home and subject to general jurisdiction only in its place of incorporation or principal place of business."  *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 343 (2d Cir. 2018) (citing *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016)).  Respondent's principal corporate address is at 383 Madison Avenue, New York, NY 10017. and is thus "found in" this District.  *See* Loft Decl. Ex. 5 (JPM 2021 10-K) at 1; *see also* Order, *In re Application of Mota*, No. 19-MC-573, ECF No. 7 at *1 (S.D.N.Y. Jan. 3, 2020) (finding that "the discovery is sought from entities that are 'found' or reside in New York, New York, i.e., (a) J.P. Morgan Chase & Co.").

That the evidence may be located outside of the United States does not change the analysis. The Second Circuit has held that documents located outside the United States are subject to discovery under Section 1782:

> [T]he text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure in turn authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control. Hence § 1782 likewise allows extraterritorial discovery.

*Valle Ruiz*, 939 F.3d at 533; *see also Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) ("[T]he location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital age—does not establish a *per se* bar to discovery under § 1782.").

12

And following the Second Circuit's decision in *Valle Ruiz*, courts in this Circuit and elsewhere across the country have held that Section 1782 reaches evidence located abroad.  *See, e.g., Kuwait Ports Authority*, 2021 WL 5909999, at *11 (S.D.N.Y. Dec. 13, 2021) (if "there are documents located abroad, so long as they are in the possession, custody, or control of Citibank, the extraterritorial discovery is permissible."); *Matter of Degens*, 2020 WL 4252725, at *5 (S.D.N.Y. July 24, 2020) (relying on *Valle Ruiz* to order production of information globally)*; Union Fenosa Gas, S.A. v. Depository Tr. Co*., 2020 WL 2793055, at *8 (S.D.N.Y. May 29, 2020) (relying on *Valle Ruiz* to "decline[ ] Egypt's request to limit discovery to materials that are within the United States"); *In re Top Matrix Holdings Ltd.*, 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020) ("[T]he Second Circuit recently made clear that discovery of evidence located extraterritorially can still be compelled under Section 1782"); *In re Belparts Group, N.V.*, 2021 WL 4942134, at *7 (D. Conn. Oct. 22, 2021) (citing *Valle Ruiz* to conclude that petitioner "is not prohibited from obtaining discovery of documents located outside the United States under § 1782, including those documents that are also possessed by foreign affiliates" of the respondent); *see also In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006) ("Section 1782 requires only that the party from whom discovery is sought be 'found' here; not that the documents be found here").[2]  While extraterritoriality is sometimes a discretionary

---

[2] *See also In re Application of Polygon Global Partners LLP*, 2021 WL 1894733, at *3 (D.R.I May 11, 2021) (rejecting argument that "§ 1782 does not allow discovery of documents held abroad" because: "First, the plain language of § 1782 does not prohibit foreign-held discovery. Second, the Federal Rules of Civil Procedure do not bar foreign discovery so long as the evidence is within the possession, custody, or control of the subpoena recipient. . . . Third, the weight of the case law holds that there is not a per se bar against discovery of evidence located abroad."); *Matter of De Leon*, 2020 WL 1180729, at *9 (S.D. Ohio Mar. 12, 2020) ("This Court finds the reasoning employed by the Second and Eleventh Circuits persuasive."); *In re Barnwell Enterprises Ltd*, 265 F. Supp. 3d 1, 15 (D.D.C. 2017) ("Accordingly, reading section 1782 to contain a *per se* bar on the discovery of material located outside the United States would impermissibly and 'categorically

consideration in assessing whether the discovery sought is unduly burdensome under the fourth *Intel* factor, there is no undue burden here.  *See* Section II.D. *infra*.

Here, the Requested Discovery is within the possession, custody, or control of the Respondent in this case.  "The case law governing the application of subpoenas served on a parent corporation to its subsidiaries turns on a pragmatic understanding of 'control.' . . . [V]arious courts have interpreted 'possession, custody, or control' to allow for discovery from parties that had practical ability to request from, or influence, another party with the desired discovery documents." *Motorola Credit Corp. v. Uzan*, 2013 WL 6098388, at *3 (S.D.N.Y. Nov. 20, 2013).  Courts in this district frequently find that a parent entity has custody or control over documents in its subsidiary's possession.  *See id.* at *4 ("This pragmatic approach to understanding 'control' will often result in a finding that a parent corporation has, practically speaking, sufficient control over its subsidiaries to require that it search them in compliance with a subpoena served on the parent."); *Gucci Am., Inc. v. Curveal Fashion*, 2010 WL 808639, at *7 (S.D.N.Y. Mar. 8, 2010) ("[A] parent company doing business in New York is required to produce documents held by its subsidiary, even if located overseas"); *Discover Fin. Servs. Inc. v. Visa U.S.A. Inc.*, 2006 WL 1699566, at *1 (S.D.N.Y. June 20, 2006) ("Numerous courts have concluded that a parent corporation has a sufficient degree of ownership and control over a wholly-owned subsidiary that it must be deemed to have control over documents located with this subsidiary.").[3]

---

restrict the discretion Congress afforded federal courts' by enacting the statute.") (quoting *Sergeeva*, 834 F.3d at 1199–1200).

[3] *See also de Leon v. Clorox Co.*, 2020 WL 4584204, at *6 (N.D. Cal. Aug. 10, 2020) (petitioner could reach documents held by a foreign subsidiary under the control of parent corporation because, *inter alia*, "Clorox does not contend that it lacks the legal right to obtain documents on demand from its subsidiaries."); *Polygon Global Partners,* 2021 WL 1894733, at *3 (rejecting argument "that discovery is improper because most of the evidence at issue is held by its foreign subsidiary."); *id.,* n.2 *supra.*

Although a recent decision from this District declined to permit discovery under 28 U.S.C. § 1782 of a different subsidiary of JPM, that decision is distinguishable from the present Application.  In *In re Liverpool Limited Partnership*, 2021 WL 5605044 (S.D.N.Y. Nov. 24, 2021), Judge Nathan found that the petitioner had not met its burden to show that JPM had possession, custody, or control over documents that were in the actual possession of an indirect JPM subsidiary in Japan.  According to Judge Nathan, the petitioner had not "established control based on the level of control other courts have found necessary," for example, where "the parent is 'responsible for the compliance, risk management, governance, and financial reporting operations' of the subsidiary, and there was 'substantial overlap between the management executives of the parent and the subsidiary,'" or where "the parent and subsidiary "share employees, . . . facilities, . . . office space, and utilize common practices and forums." *Id*. at *3 (alterations and citations omitted).  Here, by contrast, JPM has a relationship of control over J.P. Morgan Cazenove that meets these standards.

*First*, JPM "is 'responsible for the compliance, risk management, governance, and financial reporting operations' of [its] subsidiary" J.P. Morgan Cazenove.  *See Liverpool*, 2021 WL 5605044, at *3.  JPM controls J.P. Morgan Cazenove's policies and procedures relating to compliance (Loft Decl. Ex. 6 (J.P. Morgan Cazenove 2021 Annual Report) at 43); compensation (*id.* at 63); security awareness training (*id*. at 42); sanctions (*id*. at 6); stress testing (*id*. at 31, 34); IBOR transition (*id.* at 10) and other non-financial policies (*id*. at 50). J.P. Morgan Cazenove further aligns its policies regarding climate change/the environment (*id*. at 3, 47) and risk management/market risk governance (*id*. at 46) with JPM's established framework.  JPM also consolidates the financial results of J.P. Morgan Cazenove on JPM's financial statements.  Loft

Decl. Ex. 6 (J.P. Morgan Cazenove 2021 Annual Report) at 78.  This consolidation occurs in part due to regulatory capital constraints under the Basel III compliance framework.  *Id.* at 13.

*Second*, there is managerial and other personnel overlap.  J.P. Morgan Cazenove and JPM share a director, Timothy P. Flynn.  Loft Decl. Ex. 5 (JPM 2021 10-K) at 312; Ex. 6 (J.P. Morgan Cazenove 2021 Annual Report) at 54.  In addition, a J.P. Morgan Cazenove director, Daniel Pinto, also is a President and Chief Operating Officer of JPM.  Loft Decl. Ex. 6 (J.P. Morgan Cazenove 2021 Annual Report) at 58.  And there also is a "global Legal function ("Legal") [that] provides legal services and advice to the Company [J.P. Morgan Cazenove] and the Firm [JPM]."  *Id.* at 45.  Ultimate responsibility for that legal function resides with the General Counsel for JPM.  *See* Loft. Decl. Ex. 9 (The General Counsel "is responsible for the firm's exposure to legal risk across the globe.").  All of this establishes a level of control that meets the case law cited by Judge Nathan in *Liverpool* and demonstrates that JPM has at least the practical ability, if not the legal right, to obtain discovery in the possession of J.P. Morgan Cazenove.  *See also Motorola Credit Corp.*, 2013 WL 6098388, at *3 (finding parent bank had sufficient control over subsidiary bank to compel production where there was managerial overlap and "the parent ha[d] 'established basic principles for coordination of the activities of its subsidiaries,' including 'a clear vision of a ... global business, requiring cooperation and coordination among its many-parts.'").

*Third,* J.P. Morgan Cazenove is the wholly-owned subsidiary of Respondent.  *See* n.1 *supra.*  In its 2021 UK Annual Report, J.P. Morgan Cazenove stated that JPM is its "ultimate parent undertaking and controlling party."  Loft Decl. Ex. 6 (J.P. Morgan Cazenove 2021 Annual Report) at 78.  Similarly, JPM stated in its 2021 Form 10-K that its "principal operating subsidiary outside the U.S. is J.P. Morgan Securities plc [i.e., Cazenove]," and lists Cazenove as one of its

16

"significant legal entity subsidiaries" (as defined by SEC rules).[4]  Loft Decl. Ex. 5 (JPM 2021 10-K) at Ex. 22.1.  Further, JPM states in its 2021 Form 10-K that "[t]he Firm [i.e., JPM] conducts securities underwriting, dealing and brokerage activities . . . In the U.K., those activities are conducted by J.P. Morgan Securities plc."  Loft Decl. Ex. 5 (JPM 2021 10-K) at 6.[5]

In the alternative, if the Court has remaining reservations about Respondent's possession, custody, or control over the Requested Discovery, Petitioners respectfully request leave to take limited discovery (pursuant to Request 1 of the Subpoena) so that they are permitted a full and fair opportunity to meet their burden on this issue.  Courts have authorized jurisdictional discovery in Section 1782 applications when the petitioners make a colorable showing of jurisdiction, a standard that is met here.  *See In re ALB-GOLD Teigwaren GmbH*, 2019 WL 4140852, at *7-8 (E.D.N.Y. Aug. 30, 2019) (noting that "[i]f a plaintiff has identified a genuine issue of jurisdictional fact, jurisdictional discovery is appropriate even in the absence of a prima facie showing as to the existence of jurisdiction" and compelling respondents to provide discovery concerning their relationships with New York) (internal quotation marks and citation omitted); *In re Application of MTS Bank*, 2017 WL 3276879, at *6 (S.D. Fla. Aug. 1, 2017) (petitioner "should

---

[4] Designating an entity as a "subsidiary" under SEC regulations means that the parent company has control over the entity.  Under 17 CFR § 210.1-02, "subsidiary" is defined as "[a] subsidiary of a specified person is an affiliate controlled by such person directly, or indirectly through one or more intermediaries."  17 § CFR 210.1-02.  And "control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting shares, by contract, or otherwise."  *Id*.

[5] *See also In re Application of The Liverpool Ltd. P'ship*, 2021 WL 3793901 (D. Del. Aug. 26, 2021), in which the District of Delaware required Bank of America to comply with a subpoena under Section 1782 for discovery in the possession of its Japanese subsidiary: "[B]ecause BAC [Bank of America Corporation] is a Delaware corporation and the parent of BofA Securities [Japan], documents that 'reside' with BofA Securities are nonetheless in BAC's possession, custody, and control . . . . BAC's assertion that the subpoena 'request[s] documents that BAC neither possesses nor controls' is, as noted above, wrong as a matter of law."  *Id*. at *1, *3.  In *Liverpoo*l, BofA Securities was, like J.P. Morgan Cazenove, a foreign wholly owned subsidiary of a bank holding company respondent.  *See* Loft Decl. Ex. 5 (JPM 2021 10-K) at 99.

be at least afforded a chance to establish sufficient facts that establish that [respondent] 'resides' or can be 'found' in this district").

Similarly, in *Motorola Credit Corp.*, a case outside the Section 1782 context, the court permitted Motorola to serve third party discovery requests as part of ongoing litigation, including on two New York banks.  2013 WL 6098388, at *3.  The court granted Motorola's motion to compel compliance with those third party subpoenas, and ordered one of the recipient banks to "conduct the searches specified by the subpoenas of all documents which it has the legal right or authority to obtain upon demand or the practical ability to search." *Id.* at *2.  The bank "conceded that it did not search or attempt to search the records of many of its subsidiaries." *Id*.  The court was then left to consider whether the bank controlled its subsidiaries such that it was required to search those subsidiaries for responsive documents.  *Id*.  To decide that question, the court "conducted an evidentiary hearing, received extensive briefing from both sides, and heard further oral argument." *Id*.  From evidence adduced at that hearing, the court held that the bank had control over its subsidiaries.  To the extent that it has any reservations about JPM's custody or control over the Requested Discovery, this Court should adopt a similar approach here.

**B.    The Discovery Sought is "For Use" in a Foreign Proceeding.**

A Section 1782 application establishes the "for use" requirement by showing that the Requested Discovery may be submitted and relied on by the foreign tribunal. *See Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 118 (2d Cir. 2015).  To satisfy this element, Petitioners must merely show that they have the procedural right to submit the requested documents to the foreign tribunal. *Accent Delight Int'l Ltd.*, 869 F.3d at 132 .  A Section 1782 petitioner is not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings. *Brandi–Dohrn* 673 F.3d at 82 ("as a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider

18

the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application").
Instead, the district court considers "the *practical ability* of an applicant to place a beneficial
document—or the information it contains—before a foreign tribunal." *Accent Delight*, 869 F.3d
at 131 (emphasis added); *Mees*, 793 F.3d at 298 ("for use" element satisfied if materials sought
can "be employed with some advantage or serve some use in the proceeding").

The Bermuda Court will accept and consider any relevant evidence submitted by the
parties, so long as it is lawfully obtained within the jurisdiction in which it originates and not
otherwise subject to an exclusionary rule of evidence.  *See* Chudleigh Decl. ¶¶ 33-39.  In the
Appraisal Proceedings, the Bermuda Court will consider all facts and matters that may have a
bearing on the determination of fair value.  *Id.* ¶¶ 24-28.  Accordingly, the Bermuda Court will
consider the Requested Discovery given its relevance in determining the fair value of Petitioners'
former Jardine Strategic shares.  *Id.* ¶¶ 42-43.  The Requested Discovery is therefore plainly "for
use" in the Appraisal Proceedings.

### C.      Petitioners are "Interested Persons."

"No doubt litigants are included among . . . the interested persons who may invoke
§ 1782." *Azima v. Citibank, N.A.*, 2022 WL 1287938, at *3 (S.D.N.Y. Apr. 29, 2022) (quoting
*Intel*, 542 U.S. at 256.  Petitioners are parties to the Appraisal Proceedings, Chudleigh Decl. ¶ 3,
and are thus "interested persons" under Section 1782.

## II.      THE *INTEL* FACTORS WEIGH STRONGLY IN PETITIONERS' FAVOR.

### A.      *Intel* I: Respondent is Not a Party to the Bermuda Appraisal Proceedings.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to
the foreign proceeding.  This is because "when the person from whom discovery is sought is a
participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as
it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*,

542 U.S. at 264.  Here, neither Respondent nor J.P. Morgan Cazenove is a party to the Appraisal

Proceedings and thus will not be subject to party discovery in the Appraisal Proceedings.

Chudleigh Decl. ¶ 28.  Further, because Respondent resides in the United States and J.P. Morgan

Cazenove resides in the U.K., the Bermuda Court will not have jurisdiction to compel discovery

from them.  *Id*.  And because J.P. Morgan Cazenove advised Jardine Matheson as the buyer, the

Company has taken the position that Jardine Matheson's documents are not within its possession,

custody, and power, and thus not available through the Appraisal Proceedings.[6]  *See* Chudleigh

Decl. ¶ 29.  Accordingly, the first *Intel* factor weighs in favor of granting the Application.

## B.   *Intel* II: The Bermuda Court is Receptive to the Requested Discovery.

The second *Intel* factor requires courts to consider whether the "nature, attitude and

procedures" of the foreign tribunal indicate that it is receptive to Section 1782 assistance.  *Brandi–

Dohrn* 673 F.3d at 81.  In the Second Circuit, courts "should consider only authoritative proof that

a foreign tribunal would reject evidence obtained with the aid of section 1782 ... as embodied in a

forum country's judicial, executive or legislative declarations that specifically address the use of

evidence gathered under foreign procedures."  *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095,

1100 (2d Cir. 1995).  "Absent specific directions to the contrary from a foreign forum, the statute's

---

[6] The mere existence of some duplication is insufficient to preclude Section 1782 discovery.
*FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 21-mc-1019 (C.D. Cal. Nov. 22,
2021), ECF No. 40   (holding that petitioners are "entitled to, just as someone would be in
conducting discovery in a regular civil case in the United States, to test two productions against
each other and . . . to ask you for documents to ensure that . . . what they are getting from the
Company is exhausted and vice versa."); *Thomas v. City of New York*, 336 F.R.D. 1, 2–3 (E.D.N.Y.
2020) (citing *Kenyon v. Simon & Schuster, Inc.*, 2016 WL 5930265, at *6 (S.D.N.Y. Oct. 11,
2016). Courts have recognized benefits to duplicative discovery, including establishing an entity's
possession of the document, *see Thomas*, 336 F.R.D. at 3, and vetting the completeness of both
parties' individual productions.  *See Pearson v. Univ. of Chicago*, 2021 WL 194725, at *6 (D.
Conn. Jan. 20, 2021) (citing *Amphenol Corp. v. Fractus, S.A.*, 2019 WL 2521300, at *11 (S.D.N.Y.
June 19, 2019)).

underlying policy should generally prompt district courts to provide some form of discovery assistance."  *Id.* at 1102; *see also In re Porsche*, 2016 WL 702327, at *8 ("The law on this factor is clear: 'District courts have been instructed to tread lightly and heed only clear statements by foreign tribunals' that they would reject Section 1782 assistance.") (internal citations omitted).

Therefore, there is a strong presumption that foreign tribunals will be receptive to evidence obtained under Section 1782, and thus the burden is placed on the party opposing discovery to show that a foreign tribunal would reject the evidence obtained through Section 1782.  *See In re Al-Attabi*, 2022 WL 229784, at *8 (S.D.N.Y. Jan. 26, 2022) (appeal filed) ("Second Circuit case law places the burden on the party opposing discovery [under Section 1782] to show that a foreign court would *not* be receptive to this assistance.") (emphasis original) (internal quotation marks omtited).  Courts are not permitted "to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law" in a "battle-by-affidavit of international legal experts."  *Euromepa*, 51 F.3d at 1099.

The Bermuda Court will consider any evidence that has a bearing on determining the fair value of the Company's shares.  Chudleigh Decl. ¶¶ 22-27.  And United States courts have already granted Section 1782 discovery for use in Bermudan proceedings, both on the applications of private litigants and by the Bermuda Supreme Court itself, thus evidencing that Bermuda courts are receptive to evidence obtained through Section 1782.[7]  Accordingly, the second *Intel* factor weighs in favor of granting the Application.

---

[7] Order Granting in Part Application for an Order Pursuant to 28 U.S.C. § 1782, *In the Matter of the Application of Winston Wen-Young for Assistance Before a Foreign Tribunal*, No. 21-cv-8627 (D. N.J. June 15, 2021), ECF No. 19 (granting modified 1782 application for discovery to be used in Bermudan proceedings); Order to Take Discovery in Aid of Foreign Litigation, *Am. Patriot Ins. Agency, Inc. v. Hendricks*, No. 10-CV-00985 (N.D. Ill. Feb. 19, 2010), ECF No. 8 ("This matter coming to be heard upon [Petitioners'] Petition for Discovery Litigation under 28 U.S.C. § 1782 . . . is granted."); *see also* Letter of Request for Examination of Witness Out of Jurisdiction, *Am.*

### C.   *Intel* III: Petitioners are Not Circumventing Foreign Proof-Gathering Restrictions.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. In *Intel*, the Supreme Court expressly rejected the notion that Section 1782 requires that the evidence be discoverable in the foreign proceeding itself. *Id.* at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."). This factor thus counts against discovery only in the extreme circumstances where a Section 1782 application would circumvent "proof-gathering restrictions," that is, "rules akin to privileges that *prohibit* the acquisition or use of certain materials," *Mees*, 793 F.3d at 303 n.20 (emphasis in original), or "discovery that trenched upon the *clearly established* procedures of a foreign tribunal." *Euromepa*, 51 F.3d at 1099 (emphasis in original, internal quotation marks omitted). No such circumstance is present here.

In addition, there is no exhaustion requirement, *i.e.*, a requirement that petitioner first seek the discovery in a foreign court. *Mees* 793 F.3d at 303 ("We have rejected such a quasi-exhaustion requirement, reasoning that it finds no support in the plain language of the statute and runs counter to its express purposes.") (internal quotation marks omitted); *Top Matrix Holdings*, 2020 WL 248716, at *6 ("Applicants are not required to exhaust all available remedies in the foreign jurisdiction before filing a Section 1782 application.") Instead, the third *Intel* factor is satisfied

---

*Patriot Ins. Agency, Inc. v. Hendricks*, No. 10-CV-00985 (N.D. Ill. Feb. 12, 2010), ECF No. 1-3 ("Now I . . . a Judge of the Supreme Court of Bermuda hereby request . . . you will be pleased to summon the said witness . . . . It is the understanding of this court [the Supreme Court of Bermuda] that the granting of assistance is authorised by your federal rules of civil procedure."); *In re Application of Hill*, 2005 WL 1330769 (S.D.N.Y. June 3, 2005) (rejecting motion to quash 1782 subpoena for discovery to be used in Bermudan and Hong Kong liquidation proceedings).

unless the foreign court actively prohibits the petitioner gathering the information sought.  *See Brandi–Dohrn* 673 F.3d at 82 ("While *Intel* concerned the discoverability of evidence in the foreign proceeding, we see no reason why it should not extend to the *admissibility* of evidence in the foreign proceeding." (emphasis in original)).  No such prohibition exists here.  *See* Chudleigh Decl. ¶¶ 33-39.  Therefore, the third *Intel* factor weighs in favor of granting the Application.

> ### D.     *Intel* IV: The Subpoena is Not Unduly Burdensome.

The Requested Discovery is not "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure.  *Valle Ruiz*, 939 F.3d at 532-33 ("[T]he text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure"); *see also In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998) ("The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute.").  The Subpoena seeks documents and information directly relevant to the central issues in the Appraisal Proceedings.  *See* Section I.B. *supra*.[8]  In addition, the Subpoena also is temporally limited to begin on January 1, 2020, being the year before the Acquisition was announced, a period during which it was likely being negotiated, through June 30, 2021 for a total period of approximately one-and-a-half years.  Further, there is no undue burden here in producing documents located abroad.  The documents sought will principally be in electronic form, in English, and likely are accessible from United States in any event.  *See Matter of Degens*, 2020 WL 4252725, at *5 ("Most if not all the records sought should be available electronically and

---

[8] *See In re Gushlak*, 2011 WL 3651268, at *6 (E.D.N.Y. Aug. 17, 2011) (a Section 1782 request, like any other discovery request, is "reasonably calculated to lead to relevant matter if there is *any possibility* that the information sought may be relevant to the subject matter of the action") (emphasis in original) (internal citations omitted); *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 23 (2d Cir. 1998).

therefore of little burden to access and produce.  Accordingly, requiring production of documents no matter where they are deemed to reside is appropriate in this case."); *Gemeinshcaftspraxis*, 2006 WL 3844464, at *8 ("The fact that the documents are located abroad, itself, is of little concern.  They can easily be shipped to McKinsey's headquarters in New York (or perhaps accessed electronically).").[9]

Petitioners also are willing to meet and confer with Respondent to address any scope or burden concerns.  If the Court has remaining concerns about undue burden, granting the Application will not preclude Respondent from bringing a motion to modify the Requested Discovery.  If the Court finds merit to such objections, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."  *Euromepa, S.A.*, 51 F.3d at 1101; *see also In re Habib*, 2022 WL 1173364, at *4 (S.D.N.Y. Apr. 20, 2022) ("Where discovery sought under § 1782 is unduly burdensome, the Second Circuit has instructed district courts to issue 'a limited grant of discovery,' where possible, rather than deny the application.") (internal citations and quotations omitted); *Top Matrix Holdings Ltd.,* 2020 WL 248716, at *7 (granting application because even though petitioner's "request is too broad, it can be appropriately trimmed.").

In addition, district courts have typically been "generous" in granting Rule 30(b)(6) depositions in Section 1782, even in cases with "tight schedule[s]" and other potential difficulties. *In re Porsche*, 2016 WL 702327, at *13 (permitting 30(b)(6) deposition despite "tight schedule" because it was "relatively evident from precedent in this circuit generous to Section 1782

---

[9] *See also Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, 2020 WL 820327, at *10 (N.D. Cal. Feb. 19, 2020) ("Respondents' concerns about producing documents located outside the United States is largely anachronistic").

applicants that there was a reasonable chance they would have to produce documents and prepare witnesses on a short timetable").[10]   Here, a 30(b)(6) deposition of corporate representatives is appropriate and will significantly aid the Bermuda Court in understanding complex, relevant material.  In addition, Petitioners are willing to depose any foreign-based witness remotely through an electronic platform, thereby obviating any travel related undue burden concerns.

## III.   EXPEDITED COMPLIANCE WITH THE SUBPOENA IS WARRANTED.

Petitioners request that the Court direct Respondent to produce responsive documents within 30 days of service and submit to depositions within a reasonable time after Respondent's final production of documents.  Expedition is warranted, given that the requested discovery sought by this Application must be received before the parties can agree to the "Discovery Completion Date" in the Appraisal Proceedings (being the date by which deadlines for factual and expert evidence are set).  Chudleigh Decl. ¶ 20.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant their Application.

---

[10] *In re Mother's Milk, Inc.*, 2020 WL 2514315, at *5 (S.D.N.Y. May 15, 2020) (permitting 30(b)(6) deposition because it would "provide helpful evidence to the [foreign] court in moving the case forward."); *In re Accent Delight*, 2018 WL 2849724, at *5-*6 (S.D.N.Y. June 11, 2018) (same).

Dated: June 15, 2022                                    Respectfully submitted,

By: _____

Duane L. Loft
Melissa J. Kelley
BOIES SCHILLER FLEXNER LLP[11]
55 Hudson Yards
New York, NY 10001
Telephone: (212) 446-2300
Facsimile: (212) 446-2380
dloft@bsfllp.com
mjkelley@bsfllp.com

Ira A. Schochet
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0864
Facsimile: (212) 883-7064
ischochet@labaton.com

Minyao Wang
REID COLLINS & TSAI LLP
330 West 58th Street
Suite 403
New York, NY 10019
Telephone: (212) 344-5200
Facsimile: (212) 344-5299
mwang@reidcollins.com

---

[11] Law Clerk Jeffrey Waldron contributed to the drafting of this Memorandum of Law.